**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **BENJAMIN CUNNINGHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 13-1115 (RMC)** |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Benjamin Cunningham, who is a serial *pro se* litigant in this Court, complains of alleged violations of the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552 *et seq.* He has filed a slew of motions, *see* Dkt. Nos. 3-7, 9-11, 14-15, 19, 29, and 32, and seeks the following: summary judgment; judicial notice of various documents; permission to file on the record police officers' private information; compulsory production of certain documents; impeachment of various federal officials and judges; including this Court, due to claimed human rights violations, enjoinment in an unrelated foreclosure proceeding; and sanctions against defense counsel for perceived wrongdoing. For the reasons discussed below, the Court will dismiss this case and deny the motions as moot.

## I. FACTS

Over the past five years, Mr. Cunningham has filed multiple lawsuits in this Court and in other jurisdictions concerning an incident in 2005 during which Deputy Marshals of the

U.S. Marshals Service allegedly entered and searched Mr. Cunningham's New York City

residence pursuant to a search warrant.  All of his suits have been dismissed.[1]

On July 22, 2013, Mr. Cunningham filed yet another suit.  *See* Compl. [Dkt. 1].

The Complaint, which is difficult to decipher, appears to accuse a raft of agencies and individual

federal officials of violating FOIA.  Nonetheless, Mr. Cunningham underscores that he is suing

only the Department of Justice (DOJ).[2]  *Id.* at 1[3] (characterizing the lawsuit as an attempt to

correct "errors located inside [the] caption" of *Cunningham I* and stating that the Complaint

---

[1] *See Cunningham v. DOJ* (*Cunningham II*), 961 F. Supp. 2d 226 (D.D.C. 2013) (dismissing on summary judgment suit brought against both individuals and federal agencies for alleged constitutional and statutory violations, including FOIA, in connection with 2005 search of Mr. Cunningham's home and government's refusal to designate Mr. Cunningham a crime victim); *Cunningham v. O'Neill* (*Cunningham I*), 953 F. Supp. 2d 267 (D.D.C. 2013) (analyzing FOIA action brought against ten individual federal officials for release of information concerning confidential informant from North Carolina allegedly connected to 2005 search of Mr. Cunningham's home and dismissing under Federal Rule of Civil Procedure 12(b)(6) because FOIA covers only agencies in the executive branch of government); *Cunningham v. U.S. Congress House Ethics Comm.*, Civ. No. 12-1935 (D.D.C. Feb. 14, 2013) (analyzing claim that U.S. congressman and U.S. House of Representatives Ethics Committee improperly prevented Mr. Cunningham from filing ethics complaint concerning 2005 search and dismissing suit under Speech or Debate Clause of the U.S. Constitution  (citing U.S. Const. art. I, § 6)); *Cunningham v. United States*, Civ. No. 11-330C, 2011 WL 5825147 (Fed. Cl. Nov. 16, 2011) (dismissing for lack of jurisdiction breach of contract claim that alleged, in relevant part, that magistrate judge and district court judge in *McCluskey, see infra*, had improperly handled case and conspired against him), *aff'd*, 479 F. App'x 974 (Fed. Cir.), *cert. denied*, 133 S. Ct. 665 (2012); *Cunningham v. McCluskey*, Civ. No. 05-10169, 2011 WL 3478312 (S.D.N.Y. Aug. 8, 2011) (adopting magistrate judge's report and recommendation and determining that qualified immunity barred Mr. Cunningham's Fourth Amendment claim and that availability of remedy under Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, rendered his Fifth Amendment due process claim non-cognizable); *Cunningham v. Gillis*, Civ. No. 09-cv-1768 (S.D.N.Y. Feb. 25, 2009) (finding no factual or legal basis for requiring Federal Crime Victim Office to extend crime victim benefits to Mr. Cunningham).

[2] The Complaint expressly names the following DOJ components: Executive Office of the U.S. Attorney (EOUSA), Federal Bureau of Investigation (FBI), the Office of Justice Programs (OJP), the Office for Victims of Crime (OVC), and the Marshals Service.

[3] For ease of reference, page numbers cited herein relating to Mr. Cunningham's pleadings come from the pagination inserted by the electronic case-filing system.

names "only . . [DOJ] as a defendant").[4]  He seeks under FOIA the "disclosure [and] release of agency records regarding a North Carolina State's [r]eliable [c]onfidential [i]nformant being improperly withheld," *id.* at 8, and challenges the responses he received to the four FOIA Requests that he sent to EOUSA, FBI, the Marshals Service, and OJP/OVC.[5]

### A. Mr. Cunningham's FOIA Requests

The four FOIA Requests that Mr. Cunningham sent to EOUSA, FBI, the Marshals Service, and OJP/OVC varied to some degree.  For instance, one of the Requests consisted of a single page while another included seemingly every document Mr. Cunningham has amassed concerning the 2005 search of his home.  *Cf.* Def. Mot. for Summ. J. (MSJ) [Dkt. 21], Ex. D (Hardy Decl.)[6] [Dkt. 21-7], Ex. A to Hardy Decl. (FOIA Request 1210917) [Dkt. 21-7]; Def.

---

[4] The Court notes that the body of the Complaint alleges that various individual federal officials have violated FOIA.  Mr. Cunningham's Complaint consists primarily of copies of court orders and records presumably disclosed pursuant to prior FOIA requests.  *See, e.g.*, Compl. at 2-5; 39-63.  As a result, it is unclear whether the portion of Mr. Cunningham's Complaint that names individual federal officials is merely language copied and pasted from a prior lawsuit or whether Mr. Cunningham again is attempting to sue individuals under FOIA.  If it is the latter, then Mr. Cunningham misperceives the law.  As the Court explained in *Cunningham I*, "FOIA covers only *agencies* in the *executive* branch of government."  953 F. Supp. 2d at 270.  Mr. Cunningham cannot skirt this limitation on FOIA actions by captioning the case as a suit against a federal agency.  The Court, accordingly, will analyze Mr. Cunningham's Complaint as brought only against DOJ and its components.

[5] As discussed *infra*, Mr. Cunningham's four FOIA Requests either were denied or did not result in the production of any documents.  He appealed each Request to DOJ's Office of Information Policy (OIP).  Mr. Cunningham references his FOIA Requests by the appeal numbers that OIP assigned rather than by the numbers that each DOJ subcomponent assigned upon receiving the Requests.  For ease of reference, the Court will identify Mr. Cunningham's FOIA Requests by the latter.

[6] David M. Hardy is FBI's Section Chief of the Record/Information Dissemination Section, Records Management Division.  Hardy Decl. ¶ 1.

MSJ, Ex. E (Luczynski Decl.)[7] [Dkt. 21-8], Ex. A to Luczynski Decl. (FOIA Request 2013-

1104) [Dkt. 21-8].  The one constant across all of the Requests, however, was the presence of a

cover letter.  Except for the recipient address block, each cover letter was the same: two short

paragraphs explaining that Mr. Cunningham sought information regarding a confidential

informant from North Carolina.

### 1.   FOIA Requests 1210917 and 2013-1104

On March 11, 2013, Mr. Cunningham submitted FOIA Requests to FBI and

EOUSA.  Preceding both Requests were nearly identical cover pages.  The substantive portions

of the cover letter read in total:

> Seeking North Carolina's Reliable Confidential Informant
> Documents.
>
> DUSM Nicholas Ricigliano's North Carolina State Federal Police
> Report dated November 16, 2005; investigation report dated
> December 1, 2005 and declaration document dated September 8,
> 2010 made claims that he conducted a Warrant-less Search/Seizure
> based upon an unidentified North Carolina State's Reliable
> Confidential Informant.
>
> Therefore, I need documentation and information concerning the
> DUSM Nicholas Ricigliano's North Carolina State's Reliable
> Confidential Informant from your FOIA Staff soon as possible.

See FOIA Request 1210917 at 1 (errors in original); FOIA Request 2013-1104 at 1 (errors in

original).[8]  FBI designated the Request it received as FOIA Request 1210917, Hardy Decl. ¶ 7,

---

[7] David Luczynski is an Attorney Advisor with EOUSA and liaisons with other divisions of DOJ
in responding to FOIA requests and related litigation involving EOUSA and the ninety-four U.S.
Attorneys' Offices.  Luczynski Decl. ¶ 1.

[8] The 2005 search was conducted pursuant to a search warrant.  To the extent Mr. Cunningham's
reference to a "[w]arrant-less [s]earch/[s]eizure" is an attempt to challenge the validity of the
2005 search warrant, the Court will not entertain such a claim in the context of FOIA litigation.

and EOUSA designated the Request it received as FOIA Request 2013-1104, Ex. B to Luczynski

Decl. (Apr. 18, 2013 Letter from EOUSA) [Dkt. 21-8] at 1.

FBI determined that Mr. Cunningham was seeking information that concerned

him as it related to the North Carolina confidential informant.  It then searched the indices of its

Central Records System (CRS) for responsive records.  Hardy Decl. ¶ 7.  CRS is FBI's electronic

repository for information compiled for law enforcement purposes as well as administrative,

applicant, criminal, personnel, and other files.  *Id.* ¶ 12.  It is accessed via General Indices and an

Automated Case Support System, which consists of Investigative Case Management, Electronic

Case File, and a Universal Index, by searching for the subject.  *Id.* ¶¶ 12-16.  FBI searched CRS

using the following search terms: "Benjamin Cunningham," "Cunningham, Benjamin,"

"Cunningham, B," "North Carolina State Reliable Confidential Informant," and "North Carolina

Confidential Informant Program."  FBI used Mr. Cunningham's birthdate to aid its identification

of responsive records.  Yet, no responsive records were located.[9]  *Id.* ¶¶ 18, 20.

On March 28, 2013, FBI informed Mr. Cunningham that it had not located any

records responsive to his FOIA Request.  Ex. C to Hardy Decl. (Mar. 28, 2013 Letter from FBI)

[Dkt. 21-7] at 1.  FBI offered to conduct another search if Mr. Cunningham provided it with

additional information concerning the subject of his request.  *Id.*  Mr. Cunningham instead

appealed FBI's determination to OIP, *see* Ex. D to Hardy Decl. (FOIA Appeal AP-2013-02815)

---

[9] FBI notes that its "current policy is to search for and identify only 'main' files responsive to FOIA/Privacy Act requests at the initial administrative stage." *Id.* ¶ 19.  After Mr. Cunningham filed the instant Complaint, FBI again searched for records responsive to Mr. Cunningham's FOIA request.  This time it searched both main files *and* cross-references responsive to Mr. Cunningham's FOIA Request.  Again, no responsive records were located.  *Id.*

[Dkt. 21-7], which affirmed FBI's action, *see* Pl. MSJ [Dkt. 19], Ex. (June 7, 2013 Letter from OIP) [Dkt. 19] at 1.[10]

EOUSA, on the other hand, did not conduct a search.  On April 18, 2013, EOUSA informed Mr. Cunningham that his request for records was improper.  EOUSA noted that Mr. Cunningham had "requested records concerning a third party," and that such records "cannot be released absent express authorization and consent of the third party, proof that the subject of [the] request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the . . . records."  Apr. 18, 2013 Letter from EOUSA at 1.  EOUSA added that FOIA Exemptions 6 and 7(C) also generally exempt from disclosure the records that Mr. Cunningham had requested.  EOUSA offered to search for public records upon request and provided Mr. Cunningham with a form for resubmitting his request should he obtain written authorization and consent from the third party.  *Id.*

Mr. Cunningham subsequently appealed EOUSA's determination.  OIP reviewed Mr. Cunningham's appeal, *see* Pl. MSJ, Ex. (June 5, 2013 Letter from OIP) [Dkt. 19] at 1, but has not issued a decision.  Likely confused by Mr. Cunningham's multiple court filings, OIP mistakenly stated that Mr. Cunningham already had filed a lawsuit concerning EOUSA's determination and closed the matter.[11]  *See* 28 C.F.R. § 16.9(a)(3) (stating that OIP generally will not act on an appeal "if the request becomes a matter of FOIA litigation").

---

[10] The exhibits attached to Mr. Cunningham's Motion for Summary Judgment are neither numbered nor lettered.

[11] Although OIP erred in prematurely closing Mr. Cunningham's administrative appeal, this mistake is inconsequential at this stage in the proceedings.  OIP's failure to respond properly to Mr. Cunningham's administrative appeal within the time period set forth in 5 U.S.C. § 552(a)(6)(A) merely affords him "immediate recourse to the courts to compel the agency's

### 2.  FOIA Request 2013USMS23118

On March 19, 2013, the Marshals Service received a FOIA request from Mr. Cunningham.  Def. MSJ, Ex. C (Bordley Decl.)[12] [Dkt. 21-6] ¶ 2.  Mr. Cunningham included the same cover letter that accompanied his Requests to FBI and EOUSA.  *See* Ex. A to Bordley Decl. (FOIA Request 2013USMS23118) [Dkt. 21-6] at 1.  The Marshals Service responded the next day, informing Mr. Cunningham that it could not "confirm or deny the existence of records and/or information" about the confidential informant because any such records "would be exempt from disclosure pursuant to . . . exemptions 7(C), (D), and (F)" of FOIA.  Ex. B to Bordley Decl. (Mar. 20, 2013 Letter from Marshals Service) [Dkt. 21-6] at 1.  The Marshals Service advised Mr. Cunningham that he could appeal its determination to OIP.  *Id.* at 2.

Mr. Cunningham appealed the Marshals Service's determination, and OIP affirmed the Marshals Service's action on partly modified grounds.  OIP explained that the Marshals Service was not required to conduct a search for responsive records because, "without consent, proof of death, official acknowledgment of an investigation, or an overriding public interest," the information that Mr. Cunningham sought was "categorically exempt from disclosure" under Exemption 7(C) of FOIA.  Pl. MSJ, Ex. (June 10, 2013 Letter from OIP) [Dkt. 19] at 1 (citing *Blackwell v. FBI*, 646 F.3d 37, 41-42 (D.C. Cir. 2011)).  OIP added that, "to the

---

response to [his] FOIA [R]equest[s]."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990); *see also* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.").  Further, DOJ does not argue that Mr. Cunningham has failed to exhaust his administrative remedies.

[12] William E. Bordley is the Associate General Counsel and FOIA Officer for the Marshals Service.  Bordley Decl. ¶ 1.

extent that any responsive records exist, those records would also be categorically exempt from disclosure pursuant to" FOIA Exemptions 7(D) and (F).  *Id.*

### 3.  FOIA Request 13-237

On March 25, 2013, OJP received a FOIA request from Mr. Cunningham.  *See* Def. MSJ, Ex. B (Lee Decl.)[13] [Dkt. 21-5] ¶ 3.  Again, the same cover letter that was attached to Mr. Cunningham's Requests to FBI, EOUSA, and the Marshals Service was appended to the Request to OJP.  *See* Ex. A to Lee Decl. (FOIA Request 13-237) [Dkt. 21-5] at 1.  Mr. Cunningham also contacted OJP by telephone on March 25 and acknowledged that he had sent the same request to the Marshals Service.  However, Mr. Cunningham requested that OJP also process the request.  Lee Decl. ¶ 3.

OJP designated the request as FOIA Request No. 13-237, and directed OVC to conduct a search for responsive records.  *Id.*  OJP states that it did not itself conduct a search for records because it concluded that Mr. Cunningham's request did not relate to the types of records that OJP generates or would have in its files.  According to an affidavit from OJP, the agency "provides innovative leadership to federal, state, local, and tribal justice systems, by disseminating state-of-the-art knowledge and practices across America, and providing grants for the implementation of these crime fighting strategies."  *Id.* ¶ 4.  OJP, therefore, "does not directly carry out law enforcement and justice activities."  *Id.*  Law enforcement records, however, were precisely the type of records that Mr. Cunningham had requested.

On March 28, 2013, OVC informed OJP that it had not located any responsive records.  *Id.* ¶ 5.  OVC stated that it had searched its computer hard drive that contains "shared documents, including controlled correspondence files," but had not found any responsive

---

[13] Dorothy A. Lee is the FOIA Officer for OJP.  Lee Decl. ¶ 1.

records.  *Id.* ¶ 6.  OVC noted that the fact that no responsive records were found was unsurprising as it neither "maintain[s] records or information pertaining to confidential informants," *id.* ¶ 5, nor "has access to [or] maintains confidential federal investigative data," *id.* ¶ 6.

OJP informed Mr. Cunningham on April 5, 2013, that it had not located any responsive records.  *Id.* ¶ 7.  Mr. Cunningham appealed OJP's determination to DOJ's Office of Information Policy.  OIP affirmed OJP's determination on June 7, 2013.  *See* Pl. MSJ, Ex. (June 7, 2013 Letter from OIP) [Dkt. 19] at 1-2.

### B. The Instant Litigation

Mr. Cunningham moved for summary judgment on October 24, 2013.  *See* Pl. MSJ.  DOJ filed its opposition and a cross-motion for summary judgment on November 13, 2013.  *See* Def. MSJ.  The Court entered a *Fox-Neal* Order on November 14, 2013, directing Mr. Cunningham to respond to DOJ's Motion for Summary Judgment.  *See* Order [Dkt. 23]; *see also Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992); *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988). Pursuant to the Court's *Fox-Neal* Order, Mr. Cunningham filed Oppositions to Defendants' Motion for Summary Judgment on November 25, 2013, December 2, 2013, December 5, 2013, and December 30, 2013.  *See* Pl. Opp'n [Dkt. 24]; Supp. Opp'n [Dkt. 25]; Second Supp. Opp'n [Dkt. 27]; Third Supp. Opp'n [Dkt. 28].

## II. LEGAL STANDARDS

DOJ contends that there is no genuine dispute as to any material fact and that it is entitled to summary judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  Where the nonmoving party is proceeding *pro se*, courts in this jurisdiction will construe the non-moving party's filings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *United States v. Byfield*, 391 F.3d 277, 281 (D.C. Cir. 2004).  However, a *pro se* litigant still has the burden of establishing more than "[t]he mere existence of a scintilla of evidence" in support of his position.  *Anderson*, 477 U.S. at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd, Rushford v. Smith*, 656 F.2d 900 (D.C. Cir. 1981).  In a FOIA case, a court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each withheld document, or portion thereof, with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification).  An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable,

or is wholly [or partially] exempt" from FOIA's requirements.  *Goland v. CIA*, 607 F.2d 339,

352 (D.C. Cir. 1978) (internal quotation marks and citation omitted).

## III. ANALYSIS

At the outset, the Court notes that DOJ has not filed a traditional itemized *Vaughn*

index.  However, the Declarations, taken together, are "sufficiently specific, detailed, and

separable to satisfy [D]efendants' burden under *Vaughn* because the declaration[s] provide[] 'a

reasonable basis to evaluate [each] claim of privilege.'"  *Hodge v. FBI*, 764 F. Supp. 2d 134, 141

(D.D.C. 2011) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006)), *aff'd*,

703 F.3d 575 (D.C. Cir. 2013); *see also Keys v. DOJ*, 830 F.2d 337, 349 (D.C. Cir. 1987)

(explaining that the Circuit's "post-*Vaughn* opinions make clear" that a *Vaughn* index is

evaluated in terms of its function rather than form).

### A. FOIA Generally

FOIA requires federal agencies to release government records to the public upon

request, subject to nine listed exceptions.  *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374

(D.C. Cir. 2007).  To prevail in a FOIA case, the plaintiff must show that an agency has

(1) improperly (2) withheld (3) agency records.  *DOJ  v. Tax Analysts*, 492 U.S. 136, 142 (1989);

*United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004).  FOIA authorizes suit

only against federal agencies and limits the remedy for the improper withholding of records to

injunctive relief.  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150

(1980); *see also* 5 U.S.C. §§ 552(a)(4)(B) & (f)(1).  A district court may only order the agency to

produce erroneously withheld records.  *See, e.g., Kennecott Utah Copper Corp. v. U.S. Dep't of

the Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996) (finding FOIA only calls for releasing records

to a complainant, not publication in the Federal Register).  Once all requested records have been

produced, there is no longer a case or controversy and a FOIA action becomes moot.  *See Armstrong v. Exec. Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996).

   An agency defending a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.  *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd*, *Sanders v. DOJ*, No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (per curiam).  The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case.  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The question is not whether other responsive records may exist, but whether the search itself was adequate.  *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994).

   Thus, to rebut a challenge to the adequacy of a search, an agency need only show that "the search was reasonably calculated to discover the requested documents, not [that] it actually uncovered every document extant."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950-51 (D.C. Cir. 1986)).  There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess requested records.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *superseded on other grounds by* Electronic FOIA Amendments, Pub. L. No. 104-231, § 8(c), 110 Stat. 3048, 3052 (1996).  Moreover, an agency is not required to expend its limited resources on searches for which it is clear at the outset that no search would produce the records sought.  *See Amnesty Int'l USA v. CIA*, Civ. No. 07-5435, 2008 WL 2519908, at *11 n.17 (S.D.N.Y. June 19, 2008) ("Where . . .

the Government's declarations establish that a search would be futile, . . . the reasonable search required by FOIA may be no search at all.").

An agency may prove the reasonableness of its search through a declaration by a responsible agency official, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith. *Military Audit Project*, 656 F.2d at 738. An agency affidavit can demonstrate reasonableness by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotation marks and citation omitted). Agency declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard*, 926 F.2d at 1200 (internal quotation marks and citation omitted); *see also id.* at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). An affiant who is in charge of coordinating an agency's document search efforts is the most appropriate person to provide a comprehensive affidavit in FOIA litigation. *Id.* Further, declarations that contain hearsay in recounting searches for documents are generally acceptable. *Kay v. FCC*, 976 F. Supp. 23, 34 n.29 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998).

Once an agency has provided adequate affidavits, a plaintiff must demonstrate the lack of a good faith search. *See Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). If the record raises substantial doubt as to the reasonableness of the search, especially in light of "well-defined requests and positive indications of overlooked materials," then summary judgment may be inappropriate. *Founding Church of Scientology of Washington, D.C. v. NSA*, 610 F.2d 824,

837 (D.C. Cir. 1979).  However, FOIA "was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (internal quotation marks and citation omitted).  Agencies are not required to "organize documents to facilitate FOIA responses," *Goulding v. IRS*, Civ. No. 97-C-5628, 1998 WL 325202, at *5 (N.D. Ill. June 8, 1998) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975)); *see also Blakey v. Department of Justice*, 549 F. Supp. 362, 366-67 (D.D.C. 1982) ("FOIA was not intended to compel agencies to become ad hoc investigators for requesters whose requests are not compatible with their own information retrieval systems."), *aff'd*, 720 F.2d 215 (D.C. Cir. 1983) (Table), and FOIA does not require agencies to create or retain documents, *Moore v. Bush*, 601 F. Supp. 2d 6, 15 (D.D.C. 2009).  Further, an agency is not required to undertake a search that is so broad as to be unduly burdensome.  *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 891 (D.C. Cir. 1995).  "[I]t is the requester's responsibility to frame requests with sufficient particularity . . . ." *Judicial Watch*, 108 F. Supp. 2d at 27 (internal quotation marks and citation omitted).  An agency's search must be evaluated in light of the request made.  The agency is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996).

**B. Adequacy and Scope of Searches and Claimed Exemptions**

Totaling 400 pages, Mr. Cunningham's Motion for Summary Judgment, Opposition, and Supplemental Opposition are not models of brevity.  He includes a great deal of extraneous information regarding the 2005 search of his home; the procedural history of his other litigations; and bizarre and unintelligible conspiracy theories, some of which include this Court. *See, e.g.*, Second Supp. Opp'n at 28 ("The United States Congress[] Judiciary Committee is

taking orders from corrupted federal judge Rosemary M. Collyer inside Washington DC which

concerns . . . Plaintiff's FOIA . . . civil case."); Third Supp. Opp'n at 27 (alleging human rights

violations, claiming the U.S. Constitution is a "FAKE legal document[]," and contending that

"the United States Government's Federal Courthouses are loaded with Judicial Mafia Judges

who willfully commit federal crimes while sitting on the judicial bench . . .").  Yet, his argument

as to why DOJ must produce the documents he seeks can be stated concisely: DOJ and its

subcomponents (*i.e.*, FBI, EOUSA, the Marshals Service, and OJP/OVC) are, according to Mr.

Cunningham, "willfully CONCEALING legal documents" concerning a confidential informant

from North Carolina who provided information to the Marshals Service that ultimately led to the

2005 search of Mr. Cunningham's New York residence.  Pl. MSJ at 4.  Construing Mr.

Cunningham's filings liberally, *see Haines*, 404 U.S. at 520; *Byfield*, 391 F.3d at 281, the Court

will assume that Mr. Cunningham intended to argue that FBI, EOUSA, the Marshals Service,

and OJP/OVC have violated FOIA by either performing inadequate searches for records and/or

improperly invoking exemptions to FOIA.

### 1.  Searches Performed by FBI and OVC

As an initial matter, the Court notes that only FBI and OVC conducted searches in

response to Mr. Cunningham's FOIA Requests and neither agency located records responsive to

Mr. Cunningham's Requests.  The Court finds that the searches FBI and OVC conducted were

reasonably calculated to discover the documents that Mr. Cunningham had requested.  *See*

*SafeCard*, 926 F.2d at 1201; *Meeropol*, 790 F.2d at 950-51.  FBI twice searched for responsive

records in CRS, once before Mr. Cunningham filed the instant litigation and once after.  At the

direction of OJP, OVC searched for responsive records via its shared hard drive even though it

does not maintain records pertaining to confidential informants.  Lee Decl. ¶ 5.  None of these searches located responsive records.

The Court finds that FBI's and OVC's searches were adequate and reasonable for the particular circumstances of this case.  *Truitt*, 897 F.2d at 542.  FBI and OVC searched the systems of records likely to possess the requested information; they were not required to search every record system.  *See Oglesby*, 920 F.2d at 68.  Mr. Cunningham's bald assertions that FBI and OVC are hiding records are insufficient to overcome the presumption of good faith that FBI and OVC have established through their declarations.  *SafeCard*, 926 F.2d at 1200-01.  Accordingly, the Court will enter summary judgment in favor of DOJ as to the searches that FBI and OVC conducted in connection with FOIA Requests 1210917 and 13-237.

### 2. Response of OJP

OJP, on the other hand, did not conduct any search for records responsive to Mr. Cunningham's request.  According to OJP, such a search would have been pointless.  OJP avers that it "does not directly carry out law enforcement and justice activities," but "[i]nstead, . . . works in partnership with the justice community to identify the most pressing crime-related challenges confronting the justice system and to provide information, training, coordination, and innovative strategies and approaches for addressing these challenges."  Lee Decl. ¶ 4.  As a result, OJP states that none of the records it maintains would have information concerning a confidential informant.

The Court finds that OJP's rationale for not conducting a search is sufficient.  The declaration DOJ submitted on behalf of OJP is from the FOIA Officer in charge of processing FOIA requests to OJP.  She is familiar with the records that OJP maintains, and Mr. Cunningham has provided no reason to doubt her averments.  A search would have been futile as OJP does not

maintain any records concerning law enforcement activity, and by extension, confidential

informants.  *See Amnesty Int'l*, 2008 WL 2519908, at \*11 n.17; *see also Am.-Arab Anti-*

*Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 88 (D.D.C. 2007)

(reviewing affidavit of Deputy Assistant Secretary of Operations for Immigration and Customs

Enforcement (ICE) and finding averments sufficiently established that ICE did not maintain

certain information sought by FOIA litigant thereby "explain[ing] why a search would be futile

and . . . unnecessary").  Accordingly, the Court will enter summary judgment in favor of DOJ as

to FOIA Request 13-237.

### 3. Exemptions Claimed by EOUSA and the Marshals Service

EOUSA and the Marshals Service also did not conduct a search for records

responsive to Mr. Cunningham's FOIA Requests.  Unlike OJP, however, neither EOUSA nor the

Marshals Service claims that searching for records responsive to Mr. Cunningham's Requests

would be futile.  They readily admit that responsive records may be contained in their databases

and files.  Instead, EOUSA and the Marshals Service argue that a search is unnecessary because

any document found would be exempt from disclosure.  The Court agrees.

Under the circumstances, EOUSA and the Marshals Service reasonably construed

Mr. Cunningham's FOIA Requests as a demand for records not about himself vis-à-vis the

confidential informant, but rather, for specific information about the confidential informant.  *See*

*Truitt*, 897 F.2d at 542.  The latter type of information, however, is exempt from disclosure.

"[A]lthough FOIA strongly favors prompt disclosure, its nine enumerated exemptions are

designed to protect those legitimate governmental and private interests that might be harmed by

release of certain types of information."  *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003)

(internal quotation marks and citation omitted).  Information concerning confidential informants

falls under Exemption 7, which protects from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information" would cause certain enumerated harms.  5 U.S.C. § 552(b)(7).  To withhold materials properly under Exemption 7, an agency must establish both that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the six subparts of Exemption 7.  *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).

There is no dispute that any records in the possession of the Marshals Service or EOUSA regarding a confidential informant had been compiled for law enforcement purposes. Because the Marshals Service and EOUSA "specialize[] in law enforcement, [their] decision[s] to invoke [E]xemption 7 [are] entitled to deference."  *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998) (citing *Pratt*, 673 F.2d at 419).  The Marshals Service and EOUSA may rely on declarations to establish a law enforcement purpose associated with the withheld documents, but the proffered "declarations must establish a rational 'nexus between the investigation and one of the agency's law enforcement duties,' and a connection between an 'individual or incident and a possible security risk or violation of federal law.'"  *Id.* (quoting *Pratt*, 673 F.2d at 420-21). Where the declarations "'fail to supply facts' in sufficient detail to apply the *Pratt* rational nexus test, then a court may not grant summary judgment for the agency."  *Id.* (quoting *Quinon v. FBI*, 86 F.3d 1222, 1229 (D.C. Cir. 1996)).

Here, the Marshals Service and EOUSA have provided the Court with sufficient declarations.  The Marshals Service confirms that a confidential source directed investigators, who were looking for Mr. Cunningham's fugitive brother, to Mr. Cunningham's residence.  *See* Bordley Decl. ¶ 7.  The Marshals Service adds that this individual cooperated "under

circumstances where a promise of confidentiality may be inferred." *Id.* Further, both the

Marshals Service and EOUSA aver that any existing records were "compiled for law

enforcement purposes—namely, to facilitate the investigation and criminal prosecution of [Mr.

Cunningham's] brother . . . ." Luczynski Decl. ¶ 10; *see also* Bordley Decl. ¶ 6 ("The

information sought by [Mr. Cunningham] was compiled in the course of a [Marshals Service]

investigation to locate and arrest [Mr. Cunningham's] brother . . . after he failed to surrender to

authorities to begin serving a twenty year sentence for a narcotics violation."). Because the

Marshals Service and EOUSA satisfy the *Pratt* rational nexus test, the question becomes whether

EOUSA and the Marshals Service have properly withheld information pursuant to one of

Exemption 7's six subparts.

      The Marshals Service and EOUSA identify subpart (C) of Exemption 7 as a basis

for withholding the information that Mr. Cunningham sought.[14] Exemption 7(C) protects from

disclosure information in law enforcement records that "could reasonably be expected to

constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Since,

however, "disclosure, not secrecy, is the dominant objective of [FOIA]," *Department of the Air

Force v. Rose*, 425 U.S. 352, 361 (1976), Exemption 7(C) is narrowly construed, *Tax Analysts*,

492 U.S. at 151.

      Courts determine whether information is exempt from disclosure under

Exemption 7(C) by "balanc[ing] the privacy interests that would be compromised by disclosure

against the public interest in release of the requested information." *Sussman v. U.S. Marshals*

---

[14] EOUSA claims that the records Mr. Cunningham requested are not subject to disclosure pursuant to Exemptions 6 and 7(C). *See* Luczynski Decl. ¶¶ 7-10. The Marshals Service also invokes 7(C), as well as Exemptions 7(D) and 7(F). *See* Bordley Decl. ¶¶ 6-8. The Court concludes that the information is properly withheld under Exemption 7(C), and therefore, the Court need not address the applicability of Exemptions 6, 7(D), or 7(F) to the same information. *See Simon v. DOJ*, 980 F.2d 782, 785 (D.C. Cir. 1992).

*Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (internal quotation marks and citation omitted). Generally, the privacy interests of third parties mentioned in law enforcement files are "substantial," while the public interest in disclosure of their identities is "insubstantial." *SafeCard Servs.*, 926 F. 2d at 1205. "[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *Id*. at 1206; *see Nation Magazine*, 71 F.3d at 896. "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). If the public interest is government wrongdoing, then the requester must "'produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" *Boyd v. Criminal Div. of DOJ*, 475 F.3d 381, 387 (D.C. Cir. 2007) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)); *see also Blackwell*, 646 F.3d at 41 ("To obtain private information . . . , the requester must at a minimum 'produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" (quoting *Favish*, 541 U.S. at 174)).

Thus, courts evaluating invocations of Exemption 7(C) ordinarily "look to the nature of the requested document and to the FOIA purpose to be served by its disclosure." *Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990). The public interest "must be defined with sufficient specificity to enable a court to determine the nature of the public interest that it is required to balance against the privacy interests Exemption 7(C) was intended to protect." *Id.* A FOIA requester does not prevail in his efforts to obtain information about which an agency

claims Exemption 7(C) protection merely by identifying a public interest.  Rather, the public interest in disclosure must be so compelling that, on balance, it outweighs the person's legitimate privacy interests.  *See Senate of P.R. v. DOJ*, 823 F.2d 574, 588 (D.C. Cir. 1987).

Mr. Cunningham readily admits that he seeks information concerning the confidential informant for personal reasons.  He states that he needs the name of the confidential informant so that he may "commence a federal civil case against the Charlotte[,] North Carolina . . . [r]eliable [confidential informant] who caused undo [sic] damages to [Mr. Cunningham's] personal property[,] life[,] and etc."  Supp. Opp'n at 17.  Mr. Cunningham's personal interest in records concerning the confidential information is not a cognizable public interest for purposes of the FOIA Exemption 7(C) analysis, and does not overcome the privacy interests of the individual who cooperated with law enforcement.  *See Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002) (finding that a FOIA requester's "personal stake in using the requested records to attack his convictions does not count in the calculation of the public interest"), *vacated and remanded*, 541 U.S. 970, *on remand*, 378 F.3d 1115 (D.C. Cir.) (reinstating judgment), *reh'g denied and amending*, 386 F.3d 273 (D.C. Cir. 2004), *cert. denied*, 544 U.S. 983 (2005).

The Court recognizes that Mr. Cunningham claims to have been victimized by the confidential informant.  His relationship to the confidential informant, however, is immaterial to the question of whether the Court should sanction an invasion of privacy.  *See Reporters Comm.*, 489 U.S. at 771 (stating that a FIOA requester's identity has "no bearing on the merits of his . . . FOIA request").  As the Supreme Court has explained:

> whether disclosure of a private document under Exemption 7(C) is
> warranted . . . turn[s] on the nature of the requested document and
> its relationship to the basic purpose of the Freedom of Information
> Act to open agency action to the light of public scrutiny, rather

> than on the particular purpose for which the document is being requested.

*Id.* at 772 (internal quotations marks and citation omitted).  That Mr. Cunningham's request does not serve the basic purpose of FOIA is readily apparent upon comparing his case to the Supreme Court's decision in *Rose*.  There, the Supreme Court held that the disciplinary-hearing summaries that the U.S. Air Force Academy maintains are subject to disclosure under FOIA.  *See Rose*, 425 U.S. at 373-77.  The Supreme Court subsequently has noted that it would have ruled differently "[i]f, instead of seeking information about the Academy's own conduct, the requests had asked for specific files to obtain information about the persons to whom those files related . . . ."  *Reporters Comm.*, 489 U.S. at 774.  This is because "the public interest that supported the decision in *Rose* would have been inapplicable."  *Id.*  Here, Mr. Cunningham does not seek information as to law enforcement's conduct vis-à-vis confidential informants generally, but rather information regarding a specific individual (*i.e.*, "North Carolina State's [r]eliable [c]onfidential [i]nformant").  The Court thus finds that any search by EOUSA and the Marshals Service for records relating to Mr. Cunningham's FOIA Requests would have been pointless, as any responsive record would be exempt from disclosure under Exemption 7(C).  The Court, therefore, will grant summary judgment as to the Requests that EOUSA and the Marshals Service received.

### C. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after redacting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  Because FBI, OJP/OVC, EOUSA, and the Marshals Service did not locate, or were not obligated

to locate, any responsive records, the Court finds that no segregable information has been withheld.

## IV. CONCLUSION

While the Court is mindful of its duty to construe *pro se* plaintiffs' complaints and filings liberally, *see* Haines, 404 U.S. at 520; *Byfield*, 391 F.3d at 281, for the reasons discussed above, the Court will grant Defendant's Motion for Summary Judgment, Dkt. 21, and deny Mr. Cunningham's Motion for Summary Judgment, Dkt. 19.  The Court also will deny as moot Mr. Cunningham's other, non-dispositive motions, *see* Dkts. 3-7, 9-11, 14-15, 29, & 32.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
Date: April 16, 2014                                    United States District Judge